

NUMBER 13-13-00405-CR
NUMBER 13-13-00675-CR
NUMBER 13-13-00676-CR
NUMBER 13-13-00677-CR
NUMBER 13-13-00678-CR
NUMBER 13-13-00679-CR
NUMBER 13-13-00680-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

RENE ZAMORA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

---

On appeal from the 331st District Court
of Travis County, Texas.

---

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Benavides

By two issues, appellant Rene Zamora appeals his multiple-count convictions for

improper photography or visual recording, a state jail felony. *See* TEX. PENAL CODE ANN. § 21.15(b)(2) (West, Westlaw through 2013 3d C.S.). Zamora asserts that (1) the trial court erred in denying his motion to suppress evidence; and (2) the trial court improperly ordered one of his sentences to run cumulative to a prior sentence. We affirm.

## I. BACKGROUND[1]

This consolidated appeal involves multiple counts across seven charges of improper photography or visual recording brought against Zamora, who served as the equipment manager for The University of Texas at Austin's (UT) women's track team.

V.S., a UT women's track team member, testified that on September 3, 2010, after competing at a meet in Houston earlier that day, the team arrived in Austin at the Mithoff Track and Soccer Fieldhouse, and V.S. decided to take a shower in the team's locker room. As V.S. showered, she looked up to the shower curtain rod of the shower stall and noticed the lens of a "flip camera" pointed at her. Startled, V.S. pulled the curtain back and observed Zamora running away from the showers. V.S. called out to Zamora, but Zamora simply said "'sorry' and kept on running." V.S. testified that she notified her coach, Stephen Sisson, following the incident, and Coach Sisson notified the UT police department.

UT Police Detective Michael Riojas questioned Zamora and eventually obtained a search warrant of Zamora's apartment. At Zamora's apartment, Detective Riojas seized an Apple PowerBook as well as a couple of USB "thumb drives," or portable electronic

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

storage devices. The devices were later turned over to the UT Information Security Office for forensic analysis. Daryl Ashley, a UT Information Security Office employee, testified that his examination of the Apple PowerBook revealed various image and video files that depicted "individuals who were photographed or video [taped] . . . in the locker room facility on [the UT] campus or in another location."

Zamora pleaded not guilty to all of the counts alleged in appellate cause number 13-13-00405-CR and was tried by a jury. After hearing the evidence, the jury found Zamora guilty as charged and sentenced him to two years' imprisonment in the Texas Department of Criminal Justice. Zamora later pleaded guilty to the remaining six multiple-count charges and was sentenced by the trial court in the following manner: (1) two years' imprisonment for appellate cause numbers 13-13-00678-CR, 13-13-00677-CR, 13-13-00675-CR, and 13-13-00676-CR, to run concurrent with appellate cause number 13-13-00405-CR; (2) two years' imprisonment for appellate cause number 13-13-00680-CR, to run cumulative to the 13-13-00405-CR sentence; and (3) two years' imprisonment, suspended and probated for three years, for appellate cause number 13-13-00679-CR, which will commence following the 13-13-00680-CR sentence. This appeal followed.

## I.    MOTION TO SUPPRESS

By his first issue, Zamora contends that the trial court erred in denying his motion to suppress the evidence obtained from his apartment pursuant to the search warrant.

### A.    Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414

3

S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied facts. *Johnson*, 414 S.W.3d at 192.

Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

## B. Discussion

Zamora argues that the State lacked probable cause to support the issuing of the search warrant. We disagree.

"The cornerstone of the Fourth Amendment and its Texas equivalent is that a magistrate shall not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). The court of criminal appeals has noted that the definition of probable cause is "frequently beauty in the eye of the beholder." *Id.* Thus, when deciding whether probable cause exists, a "magistrate is not bound by such finely tuned standards as proof beyond a reasonable doubt or by a preponderance of the evidence; rather his sole concern should be probability." *Id.* The test is whether a reasonable

4

reading by the magistrate would lead to the conclusion that the affidavit provided a "substantial basis for the issuance of the warrant"; thus, "[t]he magistrate's sole concern should be probability." *Id.* (internal citations omitted). Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location. *Id.* It is a "flexible and nondemanding" standard. *Id.*

The probability sufficient to establish probable cause cannot be based on mere conclusory statements of an affiant's belief. *Id.* at 61. Instead, an affiant must present an affidavit that allows the magistrate to independently determine probable cause, and the magistrate's actions cannot be a mere ratification of the bare conclusions of others. *Id.* When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Id.* Therefore, we interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences, and when in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id.* The final inquiry for our review is whether there are sufficient facts, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit. *Id.* at 62. With these principles in mind, we turn to the affidavit in this case.

Detective Riojas's affidavit outlined the facts that started his investigation of Zamora, including the report filed by V.S. related to the September 3, 2010 locker room

5

shower incident. The affidavit also states that Detective Riojas spoke with Zamora, who admitted to filming V.S. in the shower with a camera that recorded onto digital memory cards. Furthermore, the affidavit states that Zamora was aware that digital media can be stored onto computers, and Zamora admitted that his home personal computer, an Apple notebook, contained "numerous amounts of graphic photographs depicting sexual acts." The affidavit provides a detailed explanation to the magistrate regarding how digital media is stored on computers. Detective Riojas also stated in his affidavit that based on his training and experience, "it is known that digital media video recordings are downloaded to computers and media storage devices." Finally, the affidavit notes that the UT women's track team owns three digital video cameras that were available to Zamora and one of the cameras was "missing its media storage card." Based on this information, Detective Riojas asserted that probable cause existed that Zamora's personal computer was used to further his crimes of improper photography or visual recording.

Zamora cites to *Cassias v. State* to support his argument that Detective Riojas's affidavit failed to establish probable cause to search his computer. 719 S.W.2d 585 (Tex. Crim. App. 1986). However, we find *Cassias* distinguishable and inapplicable to the facts of this case. In *Cassias*, the court of criminal appeals held that the facts and circumstances of the affidavit, provided by a confidential informant, in that case were "too disjointed and imprecise" to believe that illegal drugs would be found at the searched property. *Id.* at 590. Unlike in *Cassias*, Zamora, the subject of the investigation, admitted that his computer contained graphic photographs of a sexual nature, and was aware that digital media could be stored on computers. Furthermore, the affidavit noted

6

that one of the track team's video cameras was missing its media storage card. We hold that the facts and inferences in this case are sufficient to establish a fair probability that Zamora used his home computer to further his crimes of improper photography or visual recording, and we defer to the magistrate's finding that the affidavit demonstrated a substantial basis for his conclusion. *Rodriguez*, 232 S.W.3d at 62. Zamora's first issue is overruled.

## II. SENTENCING

By his second issue, Zamora asserts that the trial court improperly sentenced him.

### A. Applicable Law and Standard of Review

When a defendant has been convicted in two or more cases, the trial court has discretion to order the sentences imposed or suspended in the second and subsequent convictions to begin when the judgment and sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases. *See* TEX. CODE CRIM. PROC. art. 42.08(a) (West, Westlaw through 2013 3d C.S.). Therefore, a trial court's decision to order a defendant's sentence to run cumulatively or concurrently is reviewed for an abuse of discretion. *Id.*; *see Nicholas v. State*, 56 S.W.3d 760, 764–65 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). In this context, we will find an abuse of discretion only if the trial court (1) imposes consecutive sentences where the law requires concurrent sentences; (2) imposes sentences where the law requires consecutive ones; or (3) otherwise fails to observe the statutory requirements pertaining to sentencing. *Revels v. State*, 334 S.W.3d 46, 54 (Tex. App.—Dallas 2008, no pet.); *see also Nicholas*, 56 S.W.3d at 765.

7

**B.     Discussion**

Zamora argues that the trial court abused its discretion in ordering his suspended sentence in appellate cause number 13-13-00679-CR to begin after his release from his two-year sentence in appellate cause number 13-13-00680-CR because this was not a plea bargain case.   We disagree with Zamora's reading of the law.

Generally, when a defendant is convicted of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, the sentences shall run concurrently.   *See* TEX. PENAL CODE § 3.03(a) (West, Westlaw through 2013 3d C.S.). However, if the defendant is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of an offense under section 21.15 of the penal code, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or for which a plea agreement was reached in a case in which the accused was charged with more than one offense under section 21.15, regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections.   *See id.* § 3.03(b)(3).

It is undisputed that Zamora was found guilty of more than one offense arising out the same criminal episode under section 21.15 of the penal code (Improper Photography or Visual Recording).   Thus, we find nothing under section 3.03(b)(3) of the penal code that would have prevented the trial court from ordering Zamora's suspended sentence in appellate cause number 13-13-00679 to run consecutive to Zamora's sentence in appellate cause number 13-13-00680.   While it is true that this is not a plea bargain case, section 3.03(b)(3)(B) does not *require* a plea bargain, as Zamora erroneously asserts, in

order for the trial court to order the sentences to run consecutively. Instead, that subsection is an alternative avenue under section 3.03(b)(3) for which a trial court may order the sentences to run concurrently or consecutively. As a result, the trial court did not abuse its discretion. We overrule Zamora's second issue.

### III. CONCLUSION

We affirm the trial court's judgments.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
2nd day of July, 2015.