**Ussly Ray REVELS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–07–01555–CR.**

Court of Appeals of Texas, Dallas.

Dec. 11, 2008.

Bradley K. Lollar, Katherine A. Drew, Dallas County Public Defender's Office, Dallas, for Appellant.

Craig Watkins, Dallas County Dist. Atty., Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

Following a plea of not guilty, appellant Ussly Ray Revels was convicted by a jury of aggravated sexual assault of a child under fourteen years of age. Appellant pleaded not true to one enhancement paragraph, and the trial court found the enhancement paragraph true. Punishment was assessed by the trial court at life imprisonment, to run consecutively with a sentence received by appellant for a prior conviction.

Appellant asserts three issues on appeal: (1) the evidence is factually insufficient to support his conviction, (2) the trial court abused its discretion by ordering his sentence in this case to run consecutively with that of a prior conviction, and (3) the trial court's cumulation order is insufficient to identify the prior conviction. For the reasons below, we decide appellant's first and second issues against him. To the extent appellant contends the trial court's cumulation order is insufficient to identify the prior conviction, we sustain his third issue. We modify the trial court's judgment to reflect the sentence actually imposed by the trial court. The trial court's judgment is affirmed as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The July 17, 2006 indictment in this case alleged that "[o]n or about" May 31, 1998, appellant

did unlawfully ... intentionally and knowingly cause the contact and penetration of the female sexual organ of [B.D.], a child, who was not then the spouse of defendant, by an object, to-wit: the sexual organ of said defendant, and, at the time of the offense, the child was younger than 14 years of age.

At the time of trial, B.D. was eighteen years old. She testified at trial the events at issue occurred between 1996 and 2000 when she was "kind of seven, eight, and nine" years old and living in a house on Pembrook with her mother, her sister, an uncle, appellant, and appellant's son. During that time, appellant was married to B.D.'s mother, E.D.

B.D. testified she liked appellant when she first met him. However, that changed after an incident that occurred on a day her mother had gone to work at her job as a school bus driver. As B.D. left for school, appellant told B.D. she had forgotten something at home. B.D. returned home and was alone in the house with appellant. According to B.D., appellant took her into her mother's bedroom, pulled up her skirt, pulled down his underwear, and "raped" her. B.D. testified raping meant appellant put his penis into her vagina. Appellant told her that if she told her mother about what had occurred, she would be "a whore." B.D. missed school that day. She testified that when her mother asked why she had skipped school, she did not tell her mother what had occurred "because I knew what a whore was, and I didn't want to say anything."

B.D. testified a similar incident occurred when her mother had to work late one

night and B.D. was at home with appellant. B.D. was dressed in her nightgown. Appellant told her to come into her mother's bedroom and lie beside him, and she did so. According to B.D., appellant took off her panties, pulled down his pants, and "raped" her again. B.D. stated, "[T]his time, I had blood on my clothes." She washed her nightgown and tried to hide her panties from her mother. When B.D.'s mother returned home, she asked B.D. what was wrong. B.D. told her mother she hurt herself on her bike.

On another occasion, according to B.D., appellant tried to rape her in her mother's room. B.D. testified as she struggled with appellant, she was cut by a nail sticking out of a broken closet door. On that occasion, she was able to get away from appellant before he could rape her.

According to B.D., at another time, while her mother was absent from the house at work, appellant called B.D. into her mother's bedroom and told her to lie next to him and watch television. B.D.'s mother returned home and saw B.D. and appellant in bed watching television. B.D. testified appellant had his arm around her. B.D. said her mother looked "really concerned" and told B.D. to get up and go to her room. Then, B.D. testified, she heard "a whole bunch of screaming and yelling" and her mother "threw all [appellant's] stuff out." Appellant did not live with B.D.'s family after that time.

A "week or two" later, B.D. saw appellant drive by in a green car. In addition, within a short time after that, appellant "showed up at the gate" to the backyard with a gun and told B.D. that if she "said anything," he would kill her. After that incident, B.D. testified, she did not see appellant again. B.D. testified the incidents she had described involving appellant were the only ones of which she remembered details.

B.D. stated she was born on June 16, 1989 and was seven years old in 1996. She testified that when she was fifteen years old, she told her boyfriend and her sister about the alleged sexual assaults by appellant. She did not tell anyone before that time because she was "afraid of being called a whore" and "afraid of a gun." She told her mother about the alleged assaults when she was sixteen. Her mother informed police immediately. On April 13, 2006, B.D. met with a police detective and gave a sworn statement that was admitted into evidence at trial. In that statement, B.D. wrote, in part, that (1) she had ripped and discarded her bloody nightgown after being raped by appellant; (2) after seeing appellant drive by in a green car, she never saw him again; and (3) her mother worked a nursing job in addition to her job as a bus driver during the time period the alleged assaults occurred.

On cross-examination, B.D. testified her April 13, 2006 sworn statement was not correct. Specifically, she said (1) she did not rip and discard her bloody nightgown, and (2) her mother had a second job, but B.D. did not believe it was a nursing job. B.D. testified she had been taking medication and was not in her "right mind" at the time she wrote her statement. In addition, she testified she had not described to the jury all of the incidents involving appellant that she could remember. According to B.D., there were times when appellant would put his finger into her vagina and one instance when he put his head between her legs and licked her "private."

B.D. was unable to recall the specific years the events at issue occurred or her exact age at the time of those events. She could not recall the name of the elementary school she attended during the time she lived in the house on Pembrook. Further, she testified she did not remember her

mother and appellant getting married and could not recall whether she was present when they were married. Although her recollection of the "time line" was "fuzzy," her "memory of what happened" to her was not.

Detective Kimberly Mayfield testified she had worked in the Dallas Police Department Child Abuse Unit for more than five and one-half years. She testified most of the child abuse cases she had investigated involved delayed outcry. Mayfield said she spoke to B.D. and took an affidavit from her on April 13, 2006. According to Mayfield, B.D. appeared to be in her "right mind" when she gave her statement. Mayfield testified that in a delayed outcry case involving a statement being written years later, "I expect some leeway where there is some confusion possibly about the details of like what day and what happened and that sort of thing." Mayfield stated she was unable to obtain an affidavit from B.D.'s mother because the family's phone number changed and Mayfield was unable to contact her.

Nancy McNeil, a nurse practitioner at Children's Medical Center, testified she had worked in the field of child abuse treatment for more than ten years and had performed "thousands" of sexual abuse exams on children. Although McNeil had never seen B.D., McNeil stated she would not expect to find indications of sexual abuse in a female who had been sexually assaulted at the age of eight, but was not examined until she was fifteen or sixteen years old.

Lauren McCracken, a clinical psychologist at the Dallas Children's Advocacy Center, testified "delayed outcry" is "when there is a period of time between what has happened to somebody, to a child, and then when they actually tell an adult or tell somebody." McCracken stated she did not know B.D. and was testifying regarding her own experience and training. According to McCracken, based on her experience, it is not uncommon for a child who is sexually assaulted to delay outcry for seven to eight years or longer.

Ussly Ray Revels, Jr. testified appellant is his father. Revels stated he lived at the same Pembrook house as B.D. for about a year while his father was married to E.D. According to Revels, during that time his father held a full-time security job at Frito Lay and usually worked from 6 p.m. to 6 a.m. Revels stated E.D.'s only job was as a school bus driver. She was at home usually with the children, and was not away from the house at night. After appellant and E.D. broke up, appellant became involved with a woman who owned a green car. Revels testified he did not "know [appellant] to have a gun."

Evelyn Hooper, appellant's mother, testified that during the time appellant lived at the house on Pembrook, he worked nights at Frito Lay. According to Hooper, E.D. did not work at night. Hooper testified on cross-examination that appellant did not work every night of the week and it was possible he might have stayed at night with the children during the time he lived at the Pembrook house.

E.D. testified that after she married appellant in October 1996, she moved into a house on Pembrook with her daughters and appellant. According to E.D., she "kicked [appellant] out" in 1998 because the two of them were "having some problems." They were divorced in 2000. E.D. testified she had two jobs during the time appellant lived in the Pembrook house. She drove a school bus for Dallas County and had a home health care job with Housing Authority Nursing. According to E.D., she worked approximately eight or nine hours a week driving buses and worked in the evenings as a home health care aide. It was sometimes "close to nighttime"

when she got home. E.D. testified appellant "would keep the children" when she worked in the evenings. Appellant had a job working at McDonald's when they first moved into the Pembrook house and started a security job at Frito Lay several months later.

Pastor Morris E. Rolfe testified he officiated at the wedding of E.D. and appellant. According to Rolfe, E.D. and her daughters attended his church before E.D. married appellant and for some time after she and appellant "were no longer involved." He stated he thought he knew E.D. and her daughters "very well," but he never "heard anything" from E.D. or her daughters about "what the accusation was in this case."

Appellant did not testify at trial. After the jury found appellant guilty, the trial court released the jury and proceeded with the punishment phase of trial.

Three penitentiary packets containing documents regarding prior convictions of appellant were admitted into evidence. Included in those packets were three judgments against appellant: (1) an August 27, 1991 judgment regarding a conviction for aggravated sexual assault of a child under fourteen years of age in cause number F90–35519–OP in the 203rd Judicial District Court of Dallas County; (2) a June 6, 2002 judgment regarding a conviction for aggravated sexual assault of a child under fourteen years of age in cause number F–0137271–LS in the 282nd Judicial District Court of Dallas County; and (3) a February 26, 1999 judgment regarding a conviction for unlawful possession of a controlled substance in cause number F98–49251–HM in the 194th Judicial District Court of Dallas County. Also admitted into evidence were Texas Department of Criminal Justice records regarding appellant's sex offender treatment therapy during a stay in the penitentiary from 1991 to 1996.

Following the presentation of punishment evidence, the State argued, in relevant part, as follows:

Your Honor, ... the State will move that you stack the sentence on this case on the sentence [appellant] received from the conviction he received in 2002.

. . . .

In '98, [appellant] was sentenced to two years in the state jail for-he was picked up for a state jail offense of possession of controlled substance. He was sentenced in '99.

Upon his release in 2001, within a few months, he met his third victim, 11–year–old [C.A.]. And that is the conviction that he received in 2002 for which he is serving a life sentence currently.

Defense counsel argued, in part, that because of appellant's age and physical condition, "stacking his sentences would be just a gesture. And not anything that really makes a difference one way or the other."

The trial court assessed punishment as follows:

The Court does impose a life sentence in this case. It is the judgment of this Court that you are guilty in Cause Number F06–66991, State of Texas versus Revels and that you be punished in accordance with the jury's verdict and with my decision.

I grant the State's motion to stack your sentence under 42.08 of the Texas Code of Criminal Procedure. Although your argument is a sound argument, I'm doing this for—to send a message to the community with regard to this kind of activity.

The trial court's written judgment stated, in relevant part, "The Court ORDERS that the sentence in this conviction shall run consecutively and shall begin only when the judgment and sentence in the

following case has ceased to operate: F–0137271–S." (emphasis original). Appellant filed a timely motion for new trial, which the trial court overruled. This appeal followed.

## II. FACTUAL SUFFICIENCY

In his first issue, appellant contends the evidence is factually insufficient to support his conviction. Appellant asserts, "The State's case was predicated entirely on the testimony of the alleged child victim; there were no eye witnesses, no forensic evidence, no physical evidence, and no confession of guilt." According to appellant, "[t]he child's credibility was so undermined at trial that a different result is needed."

The State responds that based on B.D.'s testimony, standing alone, the evidence was sufficient to support the conviction. The State asserts "[a]lthough the [a]ppellant suggests there is an insufficiency in the State's case due to the lack of additional eyewitness, forensic, and physical evidence to corroborate the child's testimony, the law does not require it." Further, the State argues, "[B.D.'s] inconsistent accounts of circumstances and events at the time of the offense when she was very young, age seven to nine, were made irrelevant by her clear unwavering testimony describing the details of what the [a]ppellant actually did to her." According to the State, "[a] rational jury could give this conflicting evidence no weight at all."

### A. Standard of Review

In a factual sufficiency review, we view all of the evidence in a neutral light to determine whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt. See Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App.2007); Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim.App.2006); see also Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App.

2006). Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, or (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. See Lancon v. State, 253 S.W.3d 699, 705 (Tex.Crim. App.2008); Roberts, 220 S.W.3d at 524; Goodman v. State, 66 S.W.3d 283, 285–86 (Tex.Crim.App.2001).

It is the function of the jury to resolve any conflicts in the evidence. See Lancon, 253 S.W.3d at 705; see also Tex.Code Crim. Proc. Ann. art. 36.13, 38.04 (Vernon 1979 & 2007); Marshall, 210 S.W.3d at 625 (jury is in best position to evaluate credibility of witnesses and evidence). The jury is free to accept or reject any or all of the evidence presented by either side. See Lancon, 253 S.W.3d at 707; Wesbrook v. State, 29 S.W.3d 103, 111–12 (Tex.Crim.App. 2000). Unless the record clearly reveals a different result is appropriate, we must defer to the jury's determination concerning what weight to be given to contradictory testimony. Lancon, 253 S.W.3d at 705.

### B. Applicable Law

■ A defendant commits aggravated sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means and the victim is younger than fourteen years of age. Tex. Penal Code Ann. § 22.021(a) (Vernon Supp.2008). A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault. See Tex.Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); Tear v. State, 74 S.W.3d 555, 560 (Tex.App.-Dallas 2002, pet. ref'd).

### C. Application of Law to Facts

■ Appellant asserts that although "an appellate court will most probably con-

clude that the evidence is legally sufficient" to support his conviction, "B.D.'s credibility is unquestionably suspect due to the many inconsistencies in her testimony and her admission that her statement given to the police, which was meant to describe the alleged offense as accurately as possible was, in fact, not accurate in many respects." According to appellant, "over and above the lack of a specific time frame," the inconsistencies presented by B.D.'s testimony include: (1) her inability to name her elementary school at the time of the alleged offenses; (2) her conflicting testimony as to whether her mother worked a "nursing" job in the evenings; (3) her inability to recall her mother's marriage to appellant; (4) her conflicting testimony as to the last time she saw appellant; and (5) her conflicting accounts of what she did with her blood-stained nightgown. Further, appellant contends B.D.'s testimony that she was on medication and was not in her "right mind" when she gave her April 13, 2006 sworn statement "calls the accuracy of the entire statement into question." Appellant asserts, "When all the facts of this case are examined in a neutral light, it is clear that the jury reached an incorrect verdict."

The record shows B.D. consistently testified appellant penetrated her vagina with his penis during the time she was "kind of seven, eight, and nine" years old. *See* Tex. Penal Code Ann. § 22.021(a). Any inconsistent or vague details regarding B.D.'s testimony did not definitively favor or contradict the jury's verdict, but rather bore on B.D.'s credibility. *See Lancon,* 253 S.W.3d at 707. Because the jury is the sole judge of a witness's credibility and the weight to be given testimony, the jury was permitted to believe or disbelieve any part of B.D.'s testimony. *Id.; see also Wesbrook,* 29 S.W.3d at 111–12. The jury could have accepted that portion of B.D.'s testimony sufficient to support the convic-tion and disregarded the inconsistencies. *See Lancon,* 253 S.W.3d at 707. "Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Id.* at 705.

Reviewing the evidence in this case in a neutral light, we conclude the evidence supporting appellant's guilt is not so weak as to render the jury's verdict clearly wrong and manifestly unjust. *See Goodman,* 66 S.W.3d at 285–86. Further, we conclude the evidence supporting appellant's guilt is not outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *See id.* Accordingly, the evidence is factually sufficient to support appellant's conviction. *See id.; see also Lancon,* 253 S.W.3d at 705; *Roberts,* 220 S.W.3d at 524. We decide appellant's first issue against him.

## III. THE TRIAL COURT'S CUMULATION ORDER

### A. Standard of Review and Applicable Law

Under article 42.08 of the Texas Code of Criminal Procedure, a trial judge has the discretion to cumulate a defendant's sentences for two or more convictions. Tex.Code Crim. Proc. Ann. art. 42.08 (Vernon 2006). A trial court abuses its discretion when it applies an erroneous legal standard or when no reasonable view of the record supports the trial court's conclusion under the correct law and facts viewed in the light most favorable to its legal conclusion. *Nicholas v. State,* 56 S.W.3d 760, 764 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (citing *DuBose v. State,* 915 S.W.2d 493, 497–98 (Tex.Crim. App.1996), *overruled on other grounds by Guzman v. State,* 955 S.W.2d 85, 90 (Tex.

Crim.App.1997)). However, as a practical matter, an abuse of discretion in the context of cumulation of a defendant's sentences will be found only if the trial court imposes consecutive sentences where the law requires concurrent sentences, where the court imposes concurrent sentences but the law requires consecutive ones, or where the court otherwise fails to observe the statutory requirements pertaining to sentencing. *Id.* at 765. "In short, so long as the law authorizes the imposition of cumulative sentences, a trial judge has absolute discretion to stack sentences." *Id.; see also Smith v. State,* 575 S.W.2d 41, 41 (Tex.Crim.App.1979) ("Normally, the trial judge has absolute discretion to cumulate sentences.").

The Texas Court of Criminal Appeals has recommended five requirements for cumulation orders: (1) the trial court number of the prior conviction, (2) the correct name of the court where the prior conviction was taken, (3) the date of the prior conviction, (4) the term of years of the prior conviction, and (5) the nature of the prior conviction. *Ward v. State,* 523 S.W.2d 681, 682 (Tex.Crim.App.1975). It is well settled that inclusion of all of the recommended elements is not mandatory. *See Banks v. State,* 708 S.W.2d 460, 461 (Tex.Crim.App.1986); *Williams v. State,* 675 S.W.2d 754, 764 (Tex.Crim.App.1984) (op. on reh'g). However, the court of criminal appeals has "generally held that cumulation orders which recite only one of the above elements (the trial court cause number) are insufficient." *Williams,* 675 S.W.2d at 764. *But cf. Hamm v. State,* 513 S.W.2d 85, 86 (Tex.Crim.App.1974) (cumulation order that refers only to a prior cause number is sufficient if order is entered in same court as sentence to which it is made cumulative); *Gaston v. State,* 63 S.W.3d 893, 900 (Tex.App.-Dallas 2001, no pet.) (cumulation order that specified cause number and county of prior Dallas County conviction was sufficient, where court took judicial notice that Dallas County court system assigns unique numbers to all causes within system).

 To be valid, a cumulation order "should be sufficiently specific to allow the Texas Department of Criminal Justice—Institutional Division ... to identify the prior with which the newer conviction is cumulated." *Ex parte San Migel,* 973 S.W.2d 310, 311 (Tex.Crim.App.1998); *see also Gaston,* 63 S.W.3d at 900. The courts of appeals "have the authority to reform and correct cumulation orders when the necessary data is contained in the record." *Madrigal Rodriguez v. State,* 749 S.W.2d 576, 580 (Tex.App.-Corpus Christi 1988, pet. ref'd) (citing *Banks,* 708 S.W.2d at 462).

### B. Application of Law to Facts

#### 1. Purpose of Cumulation Order

 In his second issue, appellant asserts the trial court abused its discretion by ordering the sentence in this case run consecutively to that of a prior conviction. According to appellant, the trial court entered the cumulation order for "the sole and express purpose of 'sending a message to the community.'" Appellant contends the record reflects the trial court's cumulation order "is not grounded in the facts and evidence of the case, the circumstances of the case, the personal circumstances of the defendant, or the nature of the crime." Appellant argues that although courts have broad discretion to order consecutive sentences, "the unique facts of this case, as well as the trial court's express reason in ordering a consecutive sentence, requires either a reversal for a new punishment hearing or reformation of the judgment to delete the cumulation order."

The State responds that appellant's second point is not preserved for this Court's review. Further, the State argues the trial court did not abuse its discretion by ordering the sentence in this case be cumulated with another life sentence "because the order is authorized by statute and the trial court's reason for the order (to send a message to the community) is a valid justification for the order."

Assuming without deciding that appellant's second issue was preserved for review, we address appellant's assertion that "[s]ending a message to the community is not a valid justification to cumulate a sentence and results in an abuse of discretion." Appellant acknowledges in his brief before this Court the opinion in *Barrow v. State*, 207 S.W.3d 377 (Tex.Crim.App. 2006), "contains unfortunate language which might be interpreted as giving a trial court unlimited discretion to cumulate a second subsequent sentence." *Barrow* involved an appellant's complaint that the decision by the trial court to cumulate his sentences pursuant to article 42.08 was a violation of due process because it was essentially arbitrary, "there being no definite or concrete criteria that govern the decision to cumulate." *Id.* at 380. According to the appellant in *Barrow*, the trial court had exercised "statutorily authorized judicial despotism." *Id.* at 380–81. The court of criminal appeals rejected that argument and stated "[t]he Legislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums." *Id.* at 382. Additionally, the *Barrow* court stated that a trial court's statutory authority to cumulate sentences "is not based upon discrete fact-finding, but is wholly discretionary." *Id.* at 379.

Appellant argues that regardless of the "unfortunate language" in *Barrow*, "a trial court's discretion to cumulate is not, and should not be, without limitations." However, appellant cites no authority for that proposition. *See* TEX.R.APP. P. 38.1(i) (appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record). Likewise, appellant cites no authority for his contention that "[t]he desire to 'send a message to the community' should not justify a cumulation order." *See id.* On this record, we cannot conclude the trial court abused its discretion by ordering appellant's sentence in this case to run consecutively to that of a prior conviction. *See Nicholas*, 56 S.W.3d at 764–65. Appellant's second issue is decided against him.

### 2. Specificity of Cumulation Order

■ In his third issue, appellant contends the trial court's cumulation order, which identifies the prior conviction only by cause number, is insufficient to identify the prior conviction with which the newer conviction is cumulated. In the argument section of his brief before this Court, appellant asserts that because the cumulation order lacks sufficient specificity, it is a nullity. Accordingly, appellant contends, "This Court should reform the judgment to delete the cumulation order."

The State recognizes that "referring to the prior judgment and sentence only by cause number is not sufficient." However, the State argues, this Court may modify the cumulation order because the appellate record contains the necessary data and evidence.

In assessing punishment, the trial court stated in relevant part, "I grant the State's motion to stack your sentence under 42.08 of the Texas Code of Criminal Procedure." The trial court's written judgment stated,

in relevant part, "The Court ORDERS that the sentence in this conviction shall run consecutively and shall begin only when the judgment and sentence in the following case has ceased to operate: F–0137271–S." (emphasis original). The Texas Court of Criminal Appeals has generally held that cumulation orders that recite only the trial court cause number are insufficient. *See Williams*, 675 S.W.2d at 764. Consequently, we decide in favor of appellant on his third issue to the extent he asserts the trial court's cumulation order is insufficient to identify the prior conviction with which the newer conviction is cumulated.

■ However, we disagree with appellant's argument that "[b]ecause the cumulation order lacks sufficient specificity, it is a nullity." The courts of appeals "have the authority to reform and correct cumulation orders when the necessary data is contained in the record." *Madrigal Rodriguez*, 749 S.W.2d at 580 (citing *Banks*, 708 S.W.2d at 462). Here, the intent of the trial court as to sentencing is ascertainable from the record before us. *See Baltimore v. State*, 757 S.W.2d 80, 82 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd); *see also Banks*, 708 S.W.2d at 462; *Madrigal Rodriguez*, 749 S.W.2d at 580. In assessing punishment, the trial court stated it was granting the State's motion to "stack" appellant's sentences. In its oral motion, the State had requested that the trial court "stack" the sentence in this case on the life sentence appellant received "from the conviction he received in 2002." Three penitentiary packets were admitted into evidence. Only one of those penitentiary packets contained documents pertaining to a 2002 conviction. That conviction was for aggravated sexual assault of a child under fourteen years of age in cause number F–0137271–LS in the 282nd Judicial District Court of Dallas County. The June 6, 2002

judgment in cause number F–0137271–LS shows appellant received a life sentence in that case. In its cumulation order in this case, the trial court ordered appellant's sentence to run consecutively with the sentence in case number "F–0137271–S." Thus, it is apparent from the record that it was the intent of the trial court that appellant's sentence in this case should run consecutively with the life sentence appellant received June 6, 2002, in cause number F–0137271–LS in the 282nd Judicial District Court of Dallas County for aggravated sexual assault of a child under fourteen years of age. Accordingly, we will modify the judgment to reflect the sentence actually imposed by the trial court. *See Banks*, 708 S.W.2d at 462; *Baltimore*, 757 S.W.2d at 82; *Madrigal Rodriguez*, 749 S.W.2d at 580.

The portion of the trial court's cumulation order that reads, "The Court ORDERS that the sentence in this conviction shall run consecutively and shall begin only when the judgment and sentence in the following case has ceased to operate: F–0137271–S," is modified to read as follows:

The Court ORDERS that the sentence in this conviction shall run consecutively and shall begin only when the June 6, 2002 judgment and life sentence in the following case has ceased to operate: cause number F–0137271–LS in the 282nd Judicial District Court of Dallas County involving aggravated sexual assault of a child under fourteen years of age.

## IV. CONCLUSION

We conclude the evidence is factually sufficient to support appellant's conviction. In addition, we conclude the trial court did not abuse its discretion by ordering that appellant's sentence in this case run consecutively to that of a prior conviction.

Further, while we agree with both parties that the trial court's cumulation order is insufficient, we modify the judgment as indicated above because the intent of the trial court as to sentencing is ascertainable from the record before us.

As thus modified, the trial court's judgment is affirmed. *See* Tex.R.App. P. 43.2(b).