

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NOS. 02-14-00139-CR
### 02-14-00140-CR

SAMUEL HENRY                                                      APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NOS. F-2013-1050-C, F-2013-1051-C

----------

## MEMORANDUM OPINION[1]

----------

Appellant Samuel Henry appeals from his convictions for aggravated sexual assault of a child and indecency with a child. In two issues, Henry argues that the evidence was insufficient to support his convictions and that extraneous-act evidence was improperly admitted at the guilt-innocence phase of trial. Because the evidence was sufficient and because the extraneous-act evidence

---

[1]*See* Tex. R. App. P. 47.4.

was properly admitted into evidence, we overrule Henry's issues and affirm the trial court's judgments.

## I. BACKGROUND

In October 2010, Pam and Gina went on a week-long cruise, leaving Pam's daughter Cathy, who was six years old, in the care of Gina's brother who lived with Gina.[2] Henry was Gina's friend and was a frequent visitor to her home. In fact, he visited so often that many believed Henry lived with Gina. While Pam and Gina were gone on the cruise, Cathy was watching television on a bed with Henry when she turned and saw that Henry had pulled down his pants to the bottom of his thighs and was touching his penis. Cathy left the room. In February 2012, Cathy told her stepmother about the incident who, in turn, told Pam. Pam did not report Henry to the police because she did not "want to automatically accuse [Henry]," whom she trusted.

Gina's niece, Renee, spent a lot of time at Gina's home and considered Henry to be her uncle. Renee would spend the night at Gina's home and would sleep on a mattress in the living room. On September 29, 2012 when Renee was between twelve and thirteen years old, she stayed at Gina's home. She woke up to find Henry on top of her. Her underwear had been removed and Henry was having sex with her, with his penis inside her vagina. Henry kept "looking behind him, looking if anybody was coming." Renee pretended to be

[2]To protect the identities of the child complainants in this case, we use pseudonyms to identify the complainants and their relatives.

2

asleep during the entire incident. The next morning, Renee told Gina's son, who was the same age as Renee, that Henry had "raped" her but he did not believe her. Renee told no one else until February 2013, when she told a counselor at her school. The counselor reported Renee's outcry to the authorities.

Once Henry's sexual assault of Renee came to light, police investigators discovered Henry's prior exposure to Cathy. In March 2013, Pam gave a statement about Henry's actions with her daughter Cathy. In May 2013, a grand jury indicted Henry with (1) the aggravated sexual assault of Renee by causing Renee's sexual organ to contact Henry's sexual organ and (2) indecency with Cathy by exposing his genitals. *See* Tex. Penal Code Ann. § 21.11 (West 2011), § 22.021 (West Supp. 2014). Both indictments contained an enhancement paragraph alleging that Henry previously had been convicted of delivery of more than one but less than four grams of cocaine in a drug-free zone. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2010), § 481.134 (West Supp. 2014); Tex. Penal Code Ann. § 12.42 (West Supp. 2014).

At the guilt-innocence phase of trial, evidence was admitted that in 2003 when Henry was twenty-four, he began a consensual sexual relationship with Rachel, a fourteen-your-old girl. When Rachel was fifteen, she gave birth to Henry's daughter. Wendy also testified that around 2001 to 2004 when she was approximately eleven to thirteen years old, she frequently would spend the night at the home of her cousin, Gina. Henry, who also was a frequent visitor at Gina's

3

home, inappropriately rubbed on Wendy's thighs and chest on two occasions while she pretended to sleep. On the second occasion, Wendy left the room.

The jury found Henry guilty of aggravated sexual assault and indecency with a child and assessed his sentence at sixty years' and twelve years' confinement, respectively. The trial court ordered the sentences to be served consecutively. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2014). Henry appeals and argues that the evidence is legally insufficient to support his convictions and that the trial court erred by allowing Rachel and Wendy to testify.

## II. SUFFICIENCY OF THE EVIDENCE

In his second issue, Henry argues that the evidence was legally insufficient to support his convictions. Other than a recitation of the applicable standard of review, the entirety of Henry's appellate argument is that "in this case, the evidence is legally insufficient to support the verdict."

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Regarding aggravated sexual assault, Renee testified to each element of the offense. She stated that when she was twelve or thirteen years old, she woke up with Henry on top of her, her panties having been taken off, with Henry putting his penis inside her vagina. Regarding indecency, Cathy

4

testified that when she was six years old, Henry pulled his pants down such that Cathy could see his genitals. Henry does not specify how this evidence is insufficient to support his convictions and, indeed, recognizes that it was within the jury's province to determine the credibility of Renee and Cathy. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). We conclude the evidence was sufficient to support both convictions. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2014); *Revels v. State*, 334 S.W.3d 46, 53 (Tex. App.—Dallas 2008, no pet.); *Navarro v. State*, 241 S.W.3d 77, 80–81 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). We overrule issue two.

## III. EXTRANEOUS-ACT EVIDENCE

In his first issue, Henry argues that the trial court erred by admitting Rachel's and Wendy's testimony regarding extraneous acts, which affected his substantial rights. *See* Tex. R. App. P. 44.2(b); Tex. R. Evid. 403. Specifically, Henry asserts that "[t]he use of the testimony regarding extraneous acts tipped the scales for the [S]tate and the evidence was no longer the testimony of the two complainants in the instant case."

At trial, Henry objected to Rachel's and Wendy's extraneous-act testimony and argued that although relevant, it was unfairly prejudicial. The trial court overruled the objections, and we assume the trial court conducted the appropriate balancing test under Rule 403. *See Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App.—Austin 2000, pet. ref'd). Under the Rule 403 balancing test, the court necessarily determined that the probative value of the extraneous acts

5

substantially outweighed their prejudicial effect by considering (1) how compellingly the evidence served to make a fact of consequence more or less probable, (2) the potential the extraneous acts had to impress the jury in an irrational and indelible way, (3) the time the State spent in developing the evidence, and (4) the force of the State's need for the evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Henry's actions with Rachel and Wendy were strikingly similar to the charged offenses and served as additional evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; thus, tending to make a fact of consequence more probable. The State did not spend an inordinate amount of time developing Rachel's and Wendy's testimonies. Although the extraneous-act evidence could have impressed the jury in an indelible way, the State had a need to develop this evidence because there were no eyewitnesses and no physical evidence to corroborate Cathy's and Renee's outcries against Henry. We conclude the trial court did not err by admitting the testimonies of Rachel and Wendy. *See Blackwell v. State*, 193 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Jones v. State*, 119 S.W.3d 412, 423 (Tex. App.—Fort Worth 2003, no pet.). We overrule issue one.

## IV.  CONCLUSION

Having overruled Henry's two issues, we affirm the trial court's judgments.
*See* Tex. R. App. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 29, 2015