**Affirmed as modified; Opinion Filed February 18, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01062-CR

**MARGARITO MANUEL SALAZAR, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F18-00001-S**

## MEMORANDUM OPINION

Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Myers

A jury convicted appellant Margarito Manuel Salazar of indecency with a child by contact, and the trial court sentenced him to seven years and six months' confinement. In two issues, he contends the evidence is insufficient to support the conviction and that the judgment should be modified to reflect the offense for which appellant was convicted. In two cross-points, the State argues the judgment should be further modified to show either that the victim's age at the time of the offense was seven or eight, or that her age was younger than fourteen, and the trial judge, not the jury, assessed appellant's punishment. As modified, we affirm.

### DISCUSSION

### I. Sufficiency of the Evidence

In his first issue, appellant contends the evidence is insufficient to support the conviction for indecency with a child. Appellant attacks the complainant's credibility and her recollection of

events, pointing to conflicting testimony regarding when and where the offense occurred.

In reviewing a sufficiency of the evidence challenge in a criminal case, we examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2001). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The trier of fact alone judges the credibility of witnesses and determines the weight afforded their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The trier of fact may choose to disbelieve any part of a witness's testimony, *see Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), and we afford almost complete deference to the fact-finder's decision if it rests upon an evaluation of credibility. *Revels v. State*, 334 S.W.3d 46, 53 (Tex. App.—Dallas 2008, no pet.). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The indictment against appellant alleged in part as follows:

> That MARGARITO MANUEL SALAZAR, hereinafter called Defendant, on or about the 1st day of June, 2014, in the County of Dallas, State of Texas, did unlawfully, with the intent to arouse and gratify the sexual desire of the defendant, engage in sexual contact with [ ], hereinafter called complainant, a child younger than 17 years and not then the spouse of the defendant, by contact between the hand of the defendant and the GENITALS of the complainant[.]

A person commits indecency with a child by contact if, with a child younger than seventeen years of age, the person engages in sexual contact with the child or causes the child to engage in sexual contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) "any touching by a person, including touching through the clothing, of the anus or any part of the

–2–

genitals of a child"; or (2) "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person." *Id*. § 21.11(c)(1)—(2).

Courts give wide latitude to testimony provided by child victims of sexual abuse. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). A child victim's uncorroborated testimony will support a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Jones*, 428 S.W.3d at 169. Also, a child victim's outcry statement alone can suffice to support a conviction. *See Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). The State has no burden to produce any corroborating or physical evidence. *Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

The complainant in this case—born in 2006 and twelve years old when this case was tried—was appellant's step-daughter. The complainant's biological father had custody of her and she stayed with her mother and appellant in Irving, Texas, every other weekend. She testified that she initially had a good relationship with appellant, who she knew as "Mike," and cared for him like her biological father, but that later changed. Trial testimony from the complainant, her older sister, and the forensic interviewer, Bibiana Dominguez, showed that the complainant, her sister, and appellant were in the living room one evening watching television. After the complainant's sister went to bed, the complainant was sitting next to appellant on the floor.

The complainant testified that about two minutes after her sister went to bed, appellant put his right hand under her nightgown and rubbed her buttocks for a few minutes. He then moved his left hand down the complainant's left leg, reached into her underwear with two fingers, used his two fingers to rub and caress the top part of her vagina, and moved his two fingers down to rub her vagina. The complainant believed appellant's behavior was intentional. She testified that she

did not tell anyone about this incident for a couple of years—until she told a school counselor after learning in school "that you shouldn't let people touch you." This reminded the complainant about what appellant had done to her and that "[n]o one should be doing that." When the complainant later told her mother appellant had touched her, her mother would not listen to or believe her. The complainant testified that her mother still does not believe her.

Dominguez testified that the complainant told her during their September 2015 interview that appellant put his hand inside her nightgown and bra and touched her "chest," and the way the complainant was describing it indicated to Dominguez that the complainant was referring to her breast. Appellant then put his hand under the complainant's nightgown, moved her underwear away from her body, and placed his hand inside her underwear. Appellant rubbed the inside of the complainant's "middle part" (and from the way she was describing it, Dominguez concluded the complainant was referring to her vagina) with his finger and then his "whole hand," which she said "felt weird." The complainant told Dominguez appellant then reached inside her underwear with his hand and "he touched the middle of her bottom," which the complainant said "felt weird." Dominguez testified that the complainant identified the "middle part of her bottom" on a diagram of a small child by drawing a star in between the "butt cheeks." Dominguez testified that after appellant stopped, he grabbed the complainant's chin and told her not to tell anyone he had touched her or he "was gonna do it again."

After appellant finished touching the complainant, she left the living room and went to the room she shared with her sister. The complainant was crying and she told her sister that appellant had touched her. The complainant's sister recalled that the complainant would not look at her. The complainant's sister remembered that the complainant did not want to leave their bedroom the next day. The complainant and her sister testified that they did not tell their mother appellant had touched the complainant because they were frightened.

–4–

The complainant also testified about two prior incidents. She recalled one occasion when appellant brought the family's gaming console into his bedroom for the complainant and her sister to play Tetris and Mario. The complainant's sister sat on the floor in front of the bed playing a video game. Appellant was lying on his back on the bed and the complainant joined him, laying on her stomach near appellant's shoulder. As the complainant watched her sister play the game, appellant put his hand on top of the complainant's shorts and caressed her buttocks for "[a] little while." The complainant believed appellant was doing this intentionally. The complainant jumped off of the bed and joined her sister on the floor. The complainant did not tell her sister that appellant had rubbed her buttocks. The complainant did not recall how old she was during this incident. Appellant's biological daughter testified that she had never known appellant to own video games or a gaming console.

The complainant further testified that on another occasion appellant asked her to lay with him on an air mattress in the living room. The complainant joined appellant, who was lying on his right side, and sat on her right side, with her back against his chest and stomach. Appellant lifted up the complainant's oversized t-shirt with his left hand, rubbed her stomach, and then rubbed her bare breasts. The complainant was confused regarding why appellant put his hand up her shirt, and it lasted long enough for her to believe it was not accidental. Appellant stopped rubbing the complainant's breasts when her mother walked into the room. The complainant testified that her mother did not see anything. The complainant did not tell her mother or her sister about this incident.

Because of appellant's sexual abuse, the complainant attended therapy at the Children's Advocacy Center (CAC) from the fall of 2015 until August 7, 2017. The complainant blamed herself for letting appellant touch her. She thought her parents would think she was "disgusting" or they would not like her if she told them she had been touched. The complainant testified she

still felt disgust when talking about what appellant had done to her—as she was doing at trial.

Dominguez and the CAC therapist who treated the complainant, Michelle Larson, testified that children typically do not keep track of time or dates, and they often struggle with maintaining a timeline. Larson also told the jurors that all children remember things differently. Some children have very vivid, specific and detailed memories; some remember events; some remember feelings and emotions; and some remember bodily sensations. Thus, Larson concluded, it was perfectly normal for two children to remember the same event differently.

The jury heard conflicting testimony as to where the offense occurred and inconsistent statements from the complainant. Regarding the offense location, Detective Jason Maguire of the Irving Police Department testified that the complainant reported that the offense occurred at an upstairs apartment. However, appellant's biological daughter testified that appellant lived in a downstairs apartment and had previously lived in an upstairs one bedroom apartment. She also testified that appellant did not have a Nintendo set or any type of gaming console in either of those apartments. Dominguez testified that the complainant's sister told her the offense occurred at the Promenade Apartments and that the apartment complex was either in Saginaw or Irving—the complainant's sister could not remember which one. She testified that when the complainant told her about the instant allegation in September 2015, the complainant said it occurred at a downstairs two-bedroom apartment at the Promenade Apartments.

Additionally, the complainant testified that she could not remember how old she was when the offense occurred. She told Dominguez that it took place when she was in the third grade— when she would have been around eight years of age. The complainant's sister testified that she was nine years of age, and the complainant was around seven, when the complainant said that she had been abused by appellant. The complainant's sister told Dominguez the complainant was somewhere between seven and nine years of age when the abuse took place, and that she did not

know for certain one way or the other.

The jury also heard conflicting testimony on when the offense occurred. Detective Maguire acknowledged there were inconsistencies between the complainant and her sister's accounts of when the offense took place, testifying that the complainant said the offense occurred in 2013, at the end of the school year or during the summer that followed. Dominguez testified that the complainant told her that she thought the abuse took place in 2014, and the complainant's sister said it occurred two years before the complainant's 2015 outcry, after Halloween but before Thanksgiving. The complainant's sister testified that the conversation where the complainant told her she had been abused by appellant may have taken place in the fall, "a little bit before Halloween." Appellant's biological daughter and one of appellant's co-workers both testified that the last time they thought they saw appellant with the complainant and her family was in June of 2014. Detective Maguire testified that he believed appellant and the complainant's mother divorced in February of 2015.

Defense counsel cross-examined the complainant regarding inconsistencies in her account of what happened, her age at the time of the offense, how often she saw appellant after the third and final incident, and where it occurred. The defense also cross-examined her about the fact that she had an imaginary friend, "Rudy," and whether this imaginary friend influenced her allegations against appellant. She admitted that she knew appellant's actions on the three occasions when he abused her were wrong, and yet she saw appellant "a few more times" after the third and final incident and did not tell an adult about what had happened until later on, when she told her school counselor.

Appellant's argument that the evidence is insufficient rests on the assertion that there were conflicts in witness testimony, but the fact that witnesses provided conflicting testimony does not render the evidence at trial insufficient. As the sole judges of the weight and credibility of the

evidence, the jurors were free to accept some, all, or none of a witness's testimony. *See, e.g., Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Jurors heard the testimony of the witnesses and resolved the conflicting inferences, and we defer to their credibility and weight determinations. *See Jackson*, 443 U.S. at 326. Moreover, the conflicts in testimony concern the details surrounding the offense, e.g., when and where it occurred, and not the offense itself. The complainant's testimony is sufficient evidence to support the conviction, and the record shows that both Dominguez and the complainant's sister corroborated the complainant's testimony regarding the offense.

Reviewing all the evidence in the light most favorable to the verdict, we conclude the jury could have rationally found beyond a reasonable doubt that appellant was guilty of indecency with a child by contact. We overrule appellant's first issue.

## II. Modification of Judgment

In his second issue, appellant the judgment should be modified to show the correct offense for which appellant was convicted. Appellant points out that the judgment states that he was convicted of "Indecency Child Continuous," when the record shows that the correct offense is indecency with a child by contact.

We have the power to modify an incorrect judgment to make the record speak the truth when it has the necessary information before it to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we sustain appellant's second issue and will modify the judgment to reflect that appellant was convicted of the offense of indecency with a child by contact.

## III. State's Cross-Points

The State also brings two cross-points seeking further modifications of the judgment. In

its first cross-point, the State argues the judgment should be modified to state either that the complainant's age at the time of the offense was seven or eight, or that she was younger than fourteen years of age. In the second cross-point, the State contends we should modify the judgment to show the trial judge, not the jury, assessed appellant's punishment.

The record shows that the complainant was born in 2006 and that she outcried in 2015, but the judgment states "N/A" in the space provided for the age of the victim at the time of the offense. Also, the judgment states, incorrectly, that the jury assessed appellant's punishment when the record shows appellant elected punishment by the trial court and that the trial judge sentenced appellant to seven years and six months' confinement.

Accordingly, we sustain both of the State's cross-points. The judgment will be modified to reflect that the victim's age at the time of the offense was younger than fourteen years of age, and that the trial judge, not the jury, assessed appellant's punishment. *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28; *Asberry*, 813 S.W.2d at 529–30.

As modified, we affirm the trial court's judgment.


/Lana Myers/
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)
181062F.U05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARGARITO MANUEL SALAZAR,
Appellant

No. 05-18-01062-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F18-00001-S.
Opinion delivered by Justice Myers.
Justices Schenck and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The part of the judgment that reads, "Offense for which Defendant Convicted: INDECENCY CHILD CONTINOUS," should be changed to read: "Offense for which Defendant Convicted: INDECENY WITH A CHILD BY CONTACT."

"Punishment Assessed by: JURY" should be changed to read: "Punishment Assessed by: COURT."

"The age of the victim at the time of the offense was N/A" should be change to read: "The age of the victim at the time of the offense was UNDER THE AGE OF FOURTEEN."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 18th day of February, 2020.