**Affirm and Opinion Filed May 31, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00662-CR**

**MARK RAYMOND HUTSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82014-2022**

# MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Breedlove

Appellant Mark Raymond Hutson was convicted of aggravated sexual assault of a child (count 1), continuous sexual abuse of a child (count 2), and two counts of sexual assault of a child (counts 3 and 4), and sentenced to a term of imprisonment of 15 years on count 1, 40 years on count 2, and 10 years on each counts 3 and 4, all to be served concurrently. *See* TEX. PENAL CODE ANN. §§ 22.021; 21.02; 22.011. Appellant appeals, complaining that the evidence was legally and factually insufficient to support his conviction and that the trial court erred in failing to sustain

appellant's objection to the prosecutor's improper closing argument. We affirm the trial court's judgment.

## I. BACKGROUND

The complainant in the case, H.H., was 26 at the time of trial. The offenses with which appellant was charged occurred between the time H.H. was three and when she was 16.

H.H.'s mother and appellant began living together during the first year of H.H.'s life. H.H. testified that she called appellant "Dad" and that he was like a father to her. The family moved to Texas and resided in "Dallas or Richardson" when H.H. was about four years old. When H.H. was about 11 years old, the family moved to Allen, Texas. H.H. testified that appellant had already started abusing her before they moved to Allen, but that the bulk of the abuse occurred once they moved there. H.H. testified to specific incidents of abuse and more generally to incidents that ran together in her memory.

H.H. testified to her first memory of appellant, an incident that occurred in Illinois when she was about three years old. She was at home with appellant in the family's trailer while her mother was at work at a hospital across the street. H.H. recalled asking appellant for help in opening a package of ham. She entered the bedroom appellant shared with H.H.'s mother and saw appellant on the bed, unclothed. She testified, "[h]e was using his hand to rub his penis up and down." She did not know what appellant was doing but she knew it made her uncomfortable.

She asked appellant to open the package of ham, and "He said, I'll open it if you help me out." H.H. testified that she understood him to be asking her "to do something with his penis." H.H. left and crossed the street to seek assistance from her mother, and no physical contact occurred between H.H. and appellant at that time.

H.H. testified that appellant abused her regularly from the time she was 11 years old until she was 14 years old, and that appellant also abused her between the ages of 14 and 16 years old, although the abuse was less frequent.

H.H. testified more generally that the abuse would typically occur late at night or early in the morning while her mother was sleeping or after she left for work. She testified that he would come into her room, put on pornography, and then leave. He would later return to her room, using a butter knife to unlock the door if necessary, and tell her that he was going to show her how much he loves her. He would take off her pants, prop her legs up, put his arms around her, and begin assaulting her. He would put his mouth on her vagina and his fingers in her vagina. He would usually continue until she orgasmed.

H.H. testified that at first, she did not know that what appellant was doing was wrong because he told her that was how he showed his love, and she liked the way it felt. Additionally, H.H. testified that her mother had walked in while appellant was assaulting H.H. and had told her "we don't air dirty laundry." This occurred when H.H. was in kindergarten. H.H. first learned that what appellant was doing

was wrong in sixth grade while over at a friend's house. The friend had a copy of *Chicken Soup for the Soul*, which contains a story about a girl being abused by her uncle. After learning that what appellant was doing was abuse, H.H. told a friend what was happening and started going to various friends' houses to get away from home.

H.H. also testified to a specific incident occurring on her 12th birthday. Appellant entered her room by unlocking her door with a butter knife and then came in with a gun at his waist. He told her he was going to give her a special present, which H.H. took to mean vaginal sex. H.H. said she did not want it, and the two argued. At some point, appellant pulled the gun out and pointed it at her head. Her mother heard the argument and intervened. She told a boyfriend about this incident when she was in high school. That was not the only time appellant had threatened her with a gun. At other times, he would shoot the gun at the TV in her room.

In June 2012, appellant smashed H.H.'s phone after she denied him sexual contact, and he later returned to her room naked and wearing a condom and attempted to have sex with her. She resisted and he pushed her down onto the floor and ripped the crotch of her pants. She was able to fight him off, but she testified that he penetrated her vagina with his finger and put his tongue on her vagina. She testified that at this time, the penetration hurt because she knew it was wrong so she was not aroused by the contact anymore. She testified that she was terrified because he threatened to kill her.

H.H. testified to numerous blog posts she made between the ages of 12 and 18 detailing the abuse she suffered as well as suicidal ideation, self-harm, and other mental and emotional consequences of appellant's abuse.

She testified that she was taken to a hospital twice for treatment for suicidal ideation and self-harm. It was there that she made her first formal report about the sexual abuse because she wanted to get help. She felt she could not say who was abusing her because appellant would kill her, so she "tried to work around the system so they couldn't report it" but still tell them enough information that she could get the help she needed. She also submitted to a forensic interview at the Children's Advocacy Center where she again reported the abuse. During that interview, she testified that she had been abused by two different cousins in Illinois, and during one of her hospital stays, a nurse recorded that she was being abused by her biological father. She testified that the nurse was mistaken, and that she lied about her cousins because she was afraid that appellant would kill her.

H.H. testified that she went to the Allen Police Department in 2017 to give a statement. She was around her boyfriend's three-year-old niece at that time and was disturbed that someone could assault a child that young. She went to the police because she realized appellant was a danger not just to her but to others as well. She wrote out the statement, but she did not go back and turn it in until 2019. She then submitted to a forensic interview with the police.

Appellant was arrested on June 15, 2020 and charged with aggravated sexual assault of a child (count 1), continuous sexual abuse of a child (count 2), and two counts of sexual assault of a child (counts 3 and 4). Appellant pled not guilty, and the case was tried before a jury on June 6, 2022. The jury found appellant guilty on all counts.

Appellant appealed the verdict on July 5, 2022. In two issues, appellant complains that: (1) the evidence was legally and factually insufficient to convict appellant; and (2) the trial court erred in failing to sustain appellant's objection when the prosecutor shifted the burden during closing argument. In response, the State argues that: (1) H.H.'s testimony alone is sufficient to support appellant's convictions; and (2) the trial court did not abuse its discretion in overruling appellant's objection that the State shifted the burden of proof during its closing argument because the State's comment that the defense has equal subpoena power did not point to evidence *only* appellant could provide.

## II.    DISCUSSION

### A. Sufficiency of the Evidence

Appellant asserts in his first issue that the evidence is legally insufficient to support his conviction on all four counts.[1]  Specifically, appellant argues that the

---

[1] Appellant also challenges the factual sufficiency of the evidence in this case and requests we depart from the precedent set by the Court of Criminal Appeals in *Brooks v. State*, which abolished the factual sufficiency rule in Texas. *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). We decline to do so.

–6–

evidence is insufficient because "there was a significant delayed outcry by the Complainant, Complainant was a proven liar, there was a complete lack of physical evidence, no independent witness or witnesses, and little in the way of corroborating evidence." The State responds that appellant does not claim that the State failed to prove any specific element but instead attacks the complainant's credibility in general and that the jury, not appellant, was the sole judge of the complainant's credibility. We agree with the State.

### 1. Standard of Review

In determining whether the evidence is sufficient to support a criminal conviction, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979). We view the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 313; *Brooks*, 323 S.W.3d at 899. The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution so long as it is supported by the evidence. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We also defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323

S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the "rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

2. *Applicable law*

Appellant was convicted of four counts falling under three separate statutes. The requirements for each are as follows:

As relevant to the facts of this case, a defendant commits aggravated sexual assault of a child (count 1) if the defendant "intentionally or knowingly" "causes the penetration of the anus or sexual organ of a child by any means" or "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor" if the defendant "uses or exhibits a deadly weapon in the course of the same criminal episode" where "the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense…" TEX. PENAL CODE ANN. §§ 22.021

> A defendant commits continuous sexual abuse of a child (count 2) if:
>
> during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense…

TEX. PENAL CODE ANN. § 21.02.

–8–

As relevant to the facts of this case, a defendant commits sexual assault of a child (counts 3 and 4) if "regardless of whether the person knows the age of the child at the time of the offense, the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means" or "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor…"  TEX. PENAL CODE ANN. § 22.011.

*3. Discussion*

The testimony of a victim alone, even if that victim is a child, is sufficient to support a conviction for sexual assault of a child.  *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.) (citing *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd) and TEX. CODE CRIM. PROC. ANN. art. 38.07(a)).  Corroboration of a child victim's testimony by medical or physical evidence is unnecessary.  *Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.) (citing *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.)).  Here, H.H. testified to multiple incidents of abuse spanning over a decade involving penetration of her vagina by appellant's finger and contact between appellant's mouth and her vagina.  She testified to numerous sexual comments and actions by appellant indicating his intent to gratify himself sexually through the

abuse.  This testimony alone is sufficient to sustain each of the four convictions.[2]
*See Revels*, 334 S.W.3d at 52.  "Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility."  *Id*. at 53.

We conclude that a rational trier of fact could have found the essential elements of the four offenses beyond a reasonable doubt.  *See* TEX. PENAL CODE ANN. §§ 22.021; 21.02; 22.011.  Therefore, the evidence is sufficient to uphold appellant's convictions.  *See Jackson*, 443 U.S. at 313; *Brooks*, 323 S.W.3d at 899. We overrule appellant's first issue.

**B. Improper Jury Argument**

Appellant argues in his second issue that the trial court erred in failing to sustain appellant's objection when the prosecutor shifted the burden of proof during closing argument.

To preserve error for appellate review, an appellant must show that he objected in the trial court and that his objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."  TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365

---

[2] Although appellant's brief only challenges the legality of the verdict based on the credibility of H.H.'s testimony, we note that several other witnesses testified on behalf of the State as well, including Lauren Rafino and Andy Chao.

S.W.3d 333, 339 (Tex. Crim. App. 2012).  The issue on appeal must comport with the objection made at trial.  *Id.* (citing *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)).  The objecting party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it."  *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

In the State's rebuttal argument, the prosecutor argued:

So members of the jury, why isn't [J.N.] here?  I couldn't find him to come and testify.  Defense attorney—even though it is our burden, and I recognize fully that it is our burden and our burden alone to prove this case, defense does have equal subpoena power.

Appellant immediately objected to improper shift of the burden.  However, the trial court does not provide a ruling on the objection.  Instead, the following exchange took place:

DEFENSE COUNSEL: Your Honor, I'm going to object, improper shift of the burden.

COURT: The jury can remember what the evidence is.  Let's move along.

STATE: Yes, sir.

It is unclear from this exchange whether the trial court intended to grant, overrule, or deflect the defense's motion—either way, appellant had an obligation not only to object, but also to obtain a ruling on the objection.  It is

clear from the record that appellant never asked the court to clarify its ruling, if any. A defendant's failure to pursue an adverse ruling on his objection to a jury argument forfeits his right to complain about the argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Therefore, we hold that appellant failed to preserve error regarding his improper jury argument issue by failing to pursue an adverse ruling on his objection. *See id.* Therefore, we overrule appellant's second issue.[3]

### III. CONCLUSION

We affirm the trial court's judgment.

220662f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Maricela Breedlove//
MARICELA BREEDLOVE
JUSTICE

---

[3] Even if appellant had properly preserved this issue for appeal, it would not change our decision. Any confusion caused by the objected-to language could have been cured easily by having the trial judge clarify the burden of proof, and an instruction on the burden of proof was already included in the jury charge. Therefore, any error would have been harmless. *See id.*

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARK RAYMOND HUTSON,
Appellant

No. 05-22-00662-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 401-82014-
2022.
Opinion delivered by Justice
Breedlove. Justices Nowell and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 31st day of May, 2023.