**AFFIRMED and Opinion Filed July 12, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00895-CR

### JESSE RUDOLFO GONZALES, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 401st Judicial District Court
Collin County, Texas
Trial Court Cause No. 401-80739-2016**

## MEMORANDUM OPINION
Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Reichek

Jesse Rudolfo Gonzales appeals his convictions for five counts of sexual assault of a child

and four counts of indecency with a child by contact. In four issues, appellant contends the

evidence was legally insufficient to prove that he committed one of the offenses, the jury charge

violated his right to a fair trial, and the trial court erred in allowing certain testimony that

constituted hearsay and/or improper bolstering. We affirm the trial court's judgment.

### Background

In 2015, the complainant in this case, B.M., was sixteen years old. B.M. was in a

relationship with a nineteen-year-old man named Houston Luna. Appellant was Luna's employer.

In early 2015, Luna was incarcerated on a drug offense. While he was in jail, Luna asked

B.M. to get some money for him from appellant. B.M. met appellant at a restaurant where he gave

her twenty dollars. During the meeting, appellant talked to B.M. about her relationship with Luna and asked her how old she was. B.M. told appellant she was sixteen years old and appellant told her that, if they wanted to communicate with each other, they could do so only through Snapchat. Testimony at trial explained that Snapchat is a social media application in which text messages and photographs sent to another person are automatically erased after a set amount of time.

B.M. testified she and appellant began messaging each other on Snapchat and, in the beginning, the conversations were normal. B.M. then asked appellant to help her obtain some alcohol for a party. Appellant agreed and they met in a shopping center parking lot near B.M.'s apartment. It was evening, and the parking lot was empty. B.M. got into appellant's truck and asked for the alcohol. According to B.M., they began talking and appellant reached over and began touching her breasts. B.M. then stopped speaking. When appellant asked her what was wrong, she was too scared to answer him and appellant asked B.M. to move closer to him. Again, B.M. did not respond and appellant repeated the request until B.M. moved closer. Appellant continued feeling B.M.'s chest through the top of her tank top and began touching his penis through his jeans. When appellant began undoing his belt, he asked B.M. how she would feel about "going down there." When B.M. again didn't answer, appellant pulled his penis out of his pants and asked her to perform oral sex. After he made the request several times, B.M. decided she "might as well do it" because he wasn't going to stop asking and she wanted to get away from him. When she was done, appellant gave her the alcohol and she left.

B.M. stated that, during the time she and appellant were communicating, she had begun to think of appellant as a friend. B.M. had disagreements with her mother and she felt she had no one else to talk to. She said appellant was open and supportive and she felt she could talk to him since he was older.

B.M. described multiple other incidents that occurred after the encounter in the parking lot in which she met with appellant and they engaged in sexual conduct. In one incident, appellant took B.M. to a motel room where he lay on the bed next to her and touched her breasts and vagina over her underwear. Appellant then took his clothes off, told her to take her underwear off, and had sex with her. In another incident, appellant drove B.M. out to a field and had sex with her in the back of his truck. B.M. described two occasions in which appellant took her to a house he owned in Blue Ridge, Texas. On the first occasion, appellant took her into a bedroom that appeared to have belonged to his daughter. B.M. stated they lay down on a mattress and appellant touched her vagina and put his fingers inside her. Appellant then proceeded to have sex with her. On the second occasion at the Blue Ridge house, appellant and B.M. had sex on the floor in a different room. B.M. stated appellant again put his fingers inside her vagina before they had intercourse.

B.M. stopped communicating with appellant in November 2015 when she learned Luna was being released on parole. B.M. stated she knew Luna would not like that she and appellant had been talking. According to B.M., when Luna returned home, he could tell something was wrong with her and that she was hiding something. Luna then became upset when he saw appellant's number on B.M.'s phone and B.M. confessed that she had sex with him.

Luna arranged to meet with appellant in a parking lot. During the meeting, which Luna recorded, Luna told appellant he wanted appellant's truck or some money or he would go to the police. B.M. stated she did not know Luna was going to record his conversation with appellant or that Luna was planning to ask him for money.

Later that day, Luna and B.M. were arguing and the argument was overheard by B.M.'s mother's boyfriend. The boyfriend phoned B.M.'s mother to inform her about the argument and she came home. After confronting B.M., she drove B.M. to the police department to file a report. When they arrived at the station, B.M. stated she wasn't going in and she ran away. B.M.'s mother

went into the station and gave a statement to a detective. Police later found B.M. and brought her home.

A few days after the report was made, appellant contacted Investigator Danny Stasik. Stasik stated appellant appeared aware he was going to be investigated for sexual assault of a child and he talked about how he was being blackmailed by Luna. Although appellant told Stasik he reported the alleged blackmail to the McKinney Police Department, Stasik could not find any record of such a report. During the course of the conversation, which Stasik recorded, appellant admitted he purchased alcohol for B.M. and that he told her he loved her. Appellant also admitted B.M. performed oral sex on him in his truck for about "fifteen seconds." Appellant signed a handwritten statement in which he said B.M. undid his pants to "go down" on him and, after a few seconds, he told her to stop.

The next day, B.M. underwent a forensic interview at the Child Advocacy Center. The interview was conducted by Rachel McConnell. Stasik observed the interview on a closed-circuit television in another room. During the interview, B.M. discussed some, but not all of the sexual encounters she ultimately claimed to have had with appellant. B.M. disclosed other encounters, such as the one in the parking lot and the one in the motel room, in later discussions with Stasik. Stasik testified that, based on the information he obtained from B.M., he conducted an investigation to corroborate some of the details B.M. had revealed. Stasik went to the motel that B.M. described and obtained records showing appellant had stayed there. Stasik also found a house in Blue Ridge owned by appellant. Although Stasik did not recover any physical evidence from the house showing that B.M. had been there, he testified B.M.'s description of the house matched what he found.

McConnell testified at trial concerning her interview of B.M. She said B.M. was consistent and detailed in her descriptions of what had happened. McConnell also generally testified

–4–

regarding the different phases of disclosure a child might go through with respect to revealing abuse that has occurred. McConnell stated that certain barriers might prevent a child from disclosing in an initial interview all the abuse that had occurred. During her interview with B.M., McConnell observed several of these barriers such as guilt, shame, embarrassment, and fear.

Dan Powers, the chief operating officer for the Children's Advocacy Center, also testified at trial. Powers testified regarding sex offender treatment, grooming methods used by offenders on victims, and reasons a child might delay in revealing that abuse had occurred. Powers testified that the relationship B.M. described having with appellant demonstrated elements of grooming based on his building a relationship with her and becoming a supportive person in her life while her boyfriend was away. Powers further testified that when offenders are confronted with abuse accusations they often try to minimize what actually occurred. Powers said they do not, however, normally confess to an act such as oral sex unless it actually happened.

After hearing the evidence, a jury convicted appellant of five counts of sexual assault of a child and four counts of indecency with a child by contact. Punishment for all nine convictions was assessed at eight years' confinement to run concurrently. Appellant did not file a motion for new trial, but timely brought this appeal.

**Analysis**

## I. Legal Sufficiency of the Evidence

In his first issue, appellant contends the evidence is legally insufficient to support his conviction under the first count of the indictment. The first count was based on the oral sex B.M. described having occurred in the parking lot and alleged that appellant intentionally and knowingly caused the penetration of B.M.'s mouth with his sexual organ. When reviewing a challenge to the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found

the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). The factfinder is the sole judge of the witnesses' credibility and their testimony's weight. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The factfinder may choose to disbelieve all or any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Each fact need not point directly and independently to the guilt of the appellant as long as the cumulative force of all the incriminating circumstances is enough to warrant conviction. *See Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.—Amarillo 2008, pet. ref'd). Circumstantial evidence is as probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Id.* We review all of the evidence in the case regardless of whether it was erroneously admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Appellant's challenge to the legal sufficiency of the evidence is two-pronged. First, he asserts the evidence is insufficient because B.M.'s claims concerning the oral sex in the parking lot "appear to have been made up." Appellant contends B.M.'s statements are not credible because she did not reveal the parking lot incident in her initial forensic interview, but did so only later in her conversations with Stasik. Appellant suggests that B.M.'s claim regarding the incident in the parking lot was merely an afterthought in response to prompting by Stasik. Appellant argues that, because B.M.'s testimony was not credible, the only evidence that he and B.M. engaged in oral sex is his own extrajudicial confession and a defendant cannot be convicted based solely on his

own uncorroborated extrajudicial confession. *See Williams v. State*, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997).

It is the responsibility of the factfinder to resolve conflicts and weigh the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder. *Id*. We afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility. *Revels v. State*, 334 S.W.3d 46, 53 (Tex. App.—Dallas 2008, no pet.). Appellant's counsel had ample opportunity at trial to cross-examine B.M. about her testimony and it was well within the province of the jury to choose to believe her. It is well settled that the testimony of a child victim alone will support a conviction for sexual assault. *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). Appellant's argument is without merit.

Appellant next argues the evidence is legally insufficient to support his conviction under the first count because the State failed to prove he "caused" the penetration of B.M.'s mouth by his penis as required by section 22.011(a)(2)(B) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(B). Appellant argues the evidence shows "B.M. initiated and controlled her access to [his] penis" and "his passive acquiescence to her actions would not amount to a 'cause' of the penetration." We disagree.

Section 6.04 of the penal code defines causation as "the result would not have occurred but for [the defendant's] conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04. In applying this definition here, it is important to note that there is no element of compulsion that must be proved in sexual assault of a child and a child cannot consent to sexual contact or intercourse. *Smallwood v. State*, 471 S.W.3d 601, 607 (Tex. App.—Fort Worth 2015, pet. ref'd). With respect to causation, a defendant who initiates

and directs sexual intercourse may be a "cause" of the result as much as the person who physically controls the penetration. *See Ex Parte Groves*, 571 S.W.2d 888, 892–93 (Tex. Crim. App. 1978); *Salley v. State*, No. 14-04-00185-CR, 2005 WL 2398084, at *6 (Tex. App.—Houston [14th Dist.] Sept. 8, 2005, pet. ref'd). In this case, the evidence showed that appellant pulled his penis out of his pants and repeatedly asked B.M. for oral sex until she acquiesced to get away from him. We conclude this evidence is legally sufficient to show appellant "caused" the penetration of B.M.'s mouth by his penis. We resolve appellant's fist issue against him.

## II. Jury Charge

In his second issue, appellant raises several challenges to the trial court's charge to the jury. Appellant concedes he made no objections to the charge. Absent an objection, we may reverse only if there is "fundamental" error that was so egregious and created such harm that appellant was deprived of a fair and impartial trial. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

Appellant first contends the charge created confusion over when the alleged conduct must have occurred. The charge stated as follows:

> You are instructed that while the indictment alleges that the offenses were committed on or about the 1st day of May, 2015, the 1st day of June, 2015, and the 1st day of August, 2015, you are not bound to find that the offenses, if any, took place on those specific dates. It is sufficient if such time is approximately accurate, and that offenses, if any, occurred prior to March 17, 2016, the date of the return of the indictment for said offenses in this case, and are not barred by the statute of limitations. You are instructed that you may not convict the defendant of Sexual Assault of a Child or Indecency with a Child by Contact for any acts of sexual abuse that occurred on or after January 14, 2016, when [B.M.] was the age of 17.
>
> You are further instructed that there are no statutes of limitations for the offenses of Sexual Assault of a Child and Indecency with a Child by Contact.

Appellant contends this instruction is misleading and confusing because he reads it to authorize the jury to convict him without determining the precise date of the offense and without finding that all of the offenses took place before B.M. turned 17. It is well settled in Texas that the "on or

about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitations period. *Sanchez v. State*, 400 S.W.3d 595, 600 (Tex. Crim. App. 2013). Accordingly, the language in the charge accurately informs the jury of Texas law. In addition to the above language, the charge instructed the jury, as to each alleged offense, the approximate date the offense took place. The jury was required, therefore, to determine that each specific offense occurred on or about a given date. Appellant fails to demonstrate how such an instruction is erroneous.

Appellant contends the inclusion of the date upon which the indictment was returned is confusing and misled the jury to believe they didn't need to find all of the offenses occurred before B.M. turned 17. While it is true the charge instructs the jury that the offense must have occurred before the indictment was returned in March 2016, the indictment also clearly instructs the jury that it cannot convict appellant of any offense that might have occurred after the date B.M. turned 17 in January 2016. We see nothing misleading about the instruction.

Appellant next contends that an instruction included in counts 2, 3, 5, 7, 8, and 10 amounted to an improper comment on the weight of the evidence. In those counts, the jury was instructed that,

> The State has presented evidence of more than one incident to prove the act alleged. You must find the accused not guilty unless you all agree on which incident you believe occurred beyond a reasonable doubt. All the jurors must be unanimous as to whether the incident occurred to find the accused guilty.

Appellant argues that the phrase "which incident you believe occurred" should have been qualified by the phrase "if any" and the failure to do so implied that the State's proof showed at least one offense had occurred.

The above instruction was immediately preceded by an instruction regarding the State's burden of proof. As to each of the counts, the jury was instructed that, in order to convict appellant

–9–

of the alleged offense, they had to find from the evidence that the offense occurred beyond a reasonable doubt and, if they had reasonable doubt, they must acquit him. This language necessarily qualified all of the language after it. In addition, the burden of proof was repeated in the complained of paragraphs such that the jury could not convict unless they concluded unanimously not only which incident occurred beyond a reasonable doubt, but also *whether* the incident occurred. Because the charge properly explained the State's burden of proof as to each alleged offense, and, as a whole, did not suggest to the jury that the evidence showed an offense had necessarily occurred, the omission of the "if any" language does not constitute error. *See Wilson v. State*, 905 S.W.2d 46, 49 (Tex. App.—Corpus Christi – Edinburg 1995, no pet.); *Bautista v. State*, 632 S.W.2d 846, 850 (Tex. App.—Houston [14th Dist.] 1982, no pet.).

Appellant challenges the instructions in counts 3 and 4 of the jury charge stating that they allowed the jury to convict him twice for what could have been the same offense. Although he presents his argument as charge error, appellant is essentially asserting his conviction constituted a double-jeopardy violation. A double-jeopardy violation occurs if one is convicted or punished for two offenses that are the same both in law and in fact. *Aekins v. State*, 447 S.W.3d 270, 279 (Tex. Crim. App. 2014). Where two crimes are such that one cannot be committed without necessarily committing the other, the defendant cannot be convicted or punished for both. *Id*. at 280. For example, in a case of sexual assault where contact and penetration are subsumed into one, continuing act, the defendant may be convicted of only a single sexual assault. *Id*. at 279. If, however, the defendant commits separate criminal acts, even if they are committed during a single sexual encounter, he may be convicted and punished separately for each. *Id*. at 278.

In this case, the State alleged five different sexual encounters between appellant and B.M. occurring on or about three different dates. Based on those five encounters, the State charged appellant with nine different offenses. In count 3 of the charge, the jury was instructed that, if they

found beyond a reasonable doubt that "on or about the 1st day of June, 2015, in Collin County, Texas, [appellant] did then and there, intentionally or knowingly, cause the penetration of the female sexual organ of [B.M.] … by means of [appellant's finger]," then they must find appellant guilty of sexual assault of a child. Count 4 of the charge instructed the jury that if they found beyond a reasonable doubt that "on or about the 1st day of June, 2015, in Collin County, Texas, [appellant] did then and there intentionally or knowingly, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact by touching part of the genitals of [B.M.] … by means of [appellant's] hand," then they must find appellant guilty of the offense of indecency with a child by contact. Appellant alleges the jury could have convicted him twice for the same offense because the act of touching B.M's genitals with his hand is subsumed within the act of penetrating her sexual organ with his finger.

Appellant's argument assumes that counts 3 and 4 are both based on acts occurring during the same sexual encounter. However, during its closing argument, the State laid out in detail which acts and encounters it was relying on to support each of the counts in the jury charge. With respect to count 3, the State explained it was relying on the evidence showing appellant had put his finger in B.M.'s vagina while they were in his daughter's bedroom in the house in Blue Ridge, Texas. For count 4, the State said it was relying on the evidence that appellant put his hand on B.M.'s genitals over her underwear while they were at the motel. The State went further and stated that B.M. "didn't talk about penetration of her vagina at the hotel. Penetration of her female sexual organ, her vagina, that was at the house by his finger." Accordingly, the State made very clear that counts 3 and 4 were based on entirely separate acts and sexual encounters.

In his reply brief, appellant acknowledges the State explained the counts were based on different encounters, but argues this information should have been included in the jury charge. Appellant did not request the inclusion of this information in the charge and, as noted above, he

failed to make any objections to the charge. Given the detailed explanations given to the jury regarding the basis for counts 3 and 4 in the charge, we conclude any error as to those counts was not fundamental and did not deprive appellant of a fair trial.

Finally, appellant contends the application paragraphs in counts 2 and 7 conflicted with the abstract instruction on sexual assault given at the beginning of the charge. The abstract portion of the charge described the offense of sexual assault of a child as "intentionally or knowingly, with a child younger than seventeen (17) years of age, caus[ing] the penetration of the female sexual organ or mouth of the child by any means, including the actor." The instruction implied that sexual assault could occur only if there was penetration. In the application paragraphs of counts 2 and 7, however, the jury was correctly instructed that appellant was guilty of sexual assault if they found beyond a reasonable doubt that appellant intentionally or knowingly caused B.M.'s female sexual organ to *contact* his male sexual organ. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C). It is the charge's application paragraph, and not the abstract portion, that authorizes the conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). If the application paragraph correctly instructs the jury, an erroneous abstract definition is not egregious. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). We resolve appellant's second issue against him.

## III. Hearsay

In his third issue, appellant contends the trial court erred in admitting improper hearsay evidence. We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id*. Furthermore, even if the trial court erroneously admits hearsay evidence, such error is non-constitutional and is subject to a harm analysis under appellate rule 44.2(b). *Rivera-Reyes v. State*, 252 S.W.3d 781, 786 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Under rule 44.2(b), an

error that does not affect a substantial right must be disregarded. *Id*. Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Id*. at 787. Such error is harmless if, after viewing the record as a whole, we are reasonably assured the error did not influence the jury verdict or had only a slight effect. *Id*. Evidence of the defendant's guilt is a factor to be considered in any thorough harm analysis. *Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002).

Appellant initially raises a general argument that "with few exceptions, the trial judge permitted the State to use hearsay yet almost always sustained hearsay objections made by the State to something inquired about by defense counsel even where it would have served to impeach the declarant." Although appellant lists multiple pages of the record, he fails to direct his argument at any specific evidence or ruling by the trial court. On the record pages cited by appellant, many of the hearsay objections were sustained and others were never ruled upon. Without argument directed at a specific ruling, appellant presents nothing for review. TEX. R. APP. P. 38.1(i). We are under no obligation to make appellant's arguments for him. *See Lucio v. State*, 351 S.W.3d at 896.

In his discussion of how he was harmed, appellant points to a single statement made by Stasik to which his counsel made a hearsay objection and the objection was overruled. The testimony concerned Stasik's investigation into the sexual encounter between appellant and B.M. at the motel and the records he obtained showing appellant had registered as a guest there. During discussion of the investigation, the following exchange occurred:

| [THE STATE]: | Now, this Motel 6 information that you received, how did you go about receiving that information? |
| [STASIK]: | When [B.M.] came in to talk to us, [B.M.] was the one that brought that to our attention, that the defendant had taken her – |
| [DEFENSE]: | Objection, hearsay, Your Honor. |

–13–

| [THE COURT]: | Overruled. |
| [STASIK]: | – had taken her to a Motel 6 and that they engaged in sexual intercourse. |

Appellant argues "such a prior consistent out-of-court statement was not admissible, as there had been no charge of recent fabrication or recent improper influence or motive." Appellant further argues the trial court erred in admitting the State's exhibits of printouts from the motel's guest registry "based on such an improper foundation."

Appellant does not explain why Stasik's testimony regarding how he learned about the location of one of B.M.'s sexual encounters constitutes an "improper foundation" for admission of the motel records. At trial, appellant objected to the records solely on the ground that they were not properly authenticated as business records. Appellant makes no argument regarding authentication on appeal. An appellant waives error when his argument on appeal fails to comport with the objection raised in the trial court. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

As to the hearsay objection, the out-of-court statement testified to by Stasik was not offered for the truth of the matter asserted, but only to explain why Stasik sought to obtain records from the motel. An officer may describe statements made by other people to explain his actions in an investigation without violating the rule against hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Lacaze v. State*, 346 S.W.3d 113, 121 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Even if the testimony could be considered hearsay, appellant has failed to show how he was harmed. B.M. testified at length regarding her sexual encounter with him at the motel and the motel records show he registered at the hotel as a guest. Any effect the repetition of this testimony by Stasik might have had on the case would have been slight at best. Appellant suggests, without discussion, that Stasik's testimony amounted to improper bolstering of B.M.'s credibility.

Appellant does not support this assertion with argument or authority.  TEX. R. APP. P. 38.1(i).  Nor did he object to Stasik's testimony on this basis at trial.  *Rezac*, 782 S.W.2d at 870.  Accordingly, we conclude appellant has failed to demonstrate reversible error.  We resolve appellant's third issue against him.

## IV. Expert Witnesses

In his fourth issue, appellant generally challenges the entirety of the testimony of the State's expert witnesses.  Appellant suggests that the only purpose of McConnell's and Powers's testimony was to boost B.M.'s credibility.  In making this argument, appellant makes no reference to the record other than a single statement made by McConnell to which appellant did not object.  In fact, appellant does not point us to anywhere in the record where he made any objections to the State's experts.  The failure to object at trial in a timely and specific manner waives error in admission of the evidence.  *Little v. State*, 758 S.W.2d 551, 563 (Tex. Crim. App. 1988).  Moreover, once again, without argument directed at a specific ruling, appellant presents nothing for review.  TEX. R. APP. P. 38.1(i); *See Lucio*, 351 S.W.3d at 896.  We resolve appellant's fourth issue against him.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180895F.U05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESSE RUDOLFO GONZALES, Appellant

No. 05-18-00895-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-80739-2016.
Opinion delivered by Justice Reichek.
Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 12, 2019