**AFFIRM as Modified; Opinion Filed April 7, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-19-00405-CR**
**No. 05-19-00406-CR**

**WINSTON A. MCKENZIE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-20656-T & F19-00104-T**

## MEMORANDUM OPINION
Before Justices Bridges, Molberg, and Carlyle
Opinion by Justice Carlyle

After appellant Winston A. McKenzie pleaded not guilty to aggravated sexual assault and indecency with a child, a jury found him guilty of both offenses, assessing punishment at fifty-five years' confinement and a $10,000.00 fine in each case, with the sentences to run concurrently.

In six issues on appeal, Mr. McKenzie asserts the same three complaints in each case: (1) sufficiency, (2) error in denying his motion for mistrial at the punishment phase, and (3) unauthorized fines. We affirm the trial court's judgments as modified in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## Background

At trial, Candice Cooke testified Mr. McKenzie is her ex-boyfriend. They dated from 2014 to 2017. In 2014, she and Mr. McKenzie moved from Georgia to DeSoto, Texas, with her six-year-old son and thirteen-year-old daughter, P.D. They lived in DeSoto for eight months, then moved back to Georgia.

In 2017, several months after she and Mr. McKenzie broke up, Ms. Cooke received a phone call from Mr. McKenzie's ex-wife. Based on that call, Ms. Cooke asked P.D. whether she had been "harmed in any way that I didn't know about." P.D. told her Mr. McKenzie had "touched her inappropriately" while they lived in Texas. Ms. Cooke called police, who sent an investigator to interview P.D.

P.D. testified that in summer 2015, she was thirteen years old and lived in DeSoto with her mother, her brother, and Mr. McKenzie. One night that summer, she "got in trouble" and "got grounded" for "having my boyfriend['s] name on my phone as baby." She stated Mr. McKenzie was "mad" and told her she "was too young to have somebody in my phone named that."

The next morning, P.D. was watching television in the living room when Mr. McKenzie came downstairs and asked her to make him a sandwich. Her mother was at work and her brother was at a friend's house. P.D. went into the kitchen and began making a sandwich. Mr. McKenzie came up behind her, stood very close to her, and began "rubbing on" her left arm. He was wearing boxers and a shirt. P.D. testified she felt "uncomfortable" and "could feel his penis against my back." Mr. McKenzie

took the sandwich upstairs and P.D. went back to the living room and continued watching television.

A short time later, Mr. McKenzie came back downstairs and sat on the living room couch with her. He began tickling her, something he had never done before. While tickling her, he picked her up, put her on the floor, pulled down the V-neck shirt she was wearing, and began kissing both of her breasts. P.D. testified he then "got on top of me" and "just started to dry hump me," moving up and down on top of her. She testified his penis was hard and felt it touching her vagina through her shorts and underwear. After about a minute, he got up and went upstairs. P.D. stated he "went and got bleach," put it on a towel, and rubbed the towel on her breasts where he had kissed her. He told her "not to tell anyone."

Another incident occurred on an evening that summer when P.D. was watching television in the living room with her mother and Mr. McKenzie. P.D. testified she and Mr. McKenzie were on the couch and her mother was on an air mattress on the floor. P.D.'s mother fell asleep and began snoring. Mr. McKenzie moved closer to P.D. and put his left arm around her. Then, he put his right hand inside her shorts and underwear and rubbed her vagina "up and down" with his fingers for several minutes. She testified she felt uncomfortable but did not try to pull his hand out or tell him to stop because she "was scared what would happen." Several weeks later, she told a school friend about that incident. She did not tell her mother until several months after her mother's 2017 break-up with Mr. McKenzie.

–3–

The trial evidence also included testimony of a police detective who observed P.D.'s 2017 forensic interview and a therapist's general testimony about child sexual abuse victims and perpetrators. After the jury returned guilty verdicts in both cases, the State presented evidence regarding punishment.

During the punishment phase, Mr. McKenzie pleaded "not true" to two enhancement paragraphs. In support of those enhancement paragraphs, an investigator from the Dallas County District Attorney's office testified Mr. McKenzie has three prior convictions for cocaine-related offenses, for which he received prison sentences of fifteen years, seven years, and five years, respectively.

Ms. Cooke testified the "nature" of her relationship with Mr. McKenzie was "very violent." She described an incident soon after they moved to Texas in which Mr. McKenzie "picked me up, like off my feet with one hand, and threw me into a wall and was choking me." She was scared for herself and her children, who were upstairs at the time and "knew what the story was." She remained with Mr. McKenzie because she was pregnant and had "nowhere to go." After another violent incident in Texas, she called police, but they were unable to find Mr. McKenzie. She testified that at that point she decided to leave because "he just beat me up so bad that night. He actually broke my arm. I was just scared for my life."

She moved back to Georgia with her children. Mr. McKenzie later came to Georgia and told her "he would change." They reconciled, but the violence continued. She testified they had a final fight in which Mr. McKenzie "busted a

–4–

chandelier over my head" and P.D. "came running to my defense" and told him "we just want you to leave, nobody wants you here."

During defense cross-examination, Ms. Cooke testified:

Q. And I believe you said that you called the police on numerous occasions [in Texas].

A. No. I called the police on the last occasion, is what I said.

Q. And we don't have anything tangible from that police encounter, do we, no police reports, no charges?

A. I have a police report, but there were no charges.

> [DEFENSE COUNSEL]: I've certainly not been provided with anything. May we approach, Your Honor?

> THE COURT: Yes.
> (Sidebar discussion was held)

> THE COURT: All right. I'm going to instruct the jury to totally disregard the last statement of the witness regarding any police report.

Q. So you don't have—you didn't go to a doctor for that broken arm, did you?

A. Yes.

Q. I imagine there would be records associated with that, as well.

A. Yes.

> [DEFENSE COUNSEL]: Your Honor, I'm afraid I have to object to this witness's testimony and the introduction of all these extraneous matters that I have not been given notice of.

> THE COURT: Well, Counsel, from my conversation neither has the state.

> [DEFENSE COUNSEL]: The state is responsible for their case, Your Honor. They are responsible to turn over all relevant

documents to the defense.

At that point, the court removed the jury from the courtroom. Outside the jury's presence, the prosecutor told the trial court he was "aware generally that [Mr. McKenzie] had committed violence," but was "not aware of any of those incidents at all" and had "absolutely no reports" regarding them. Defense counsel requested "a mistrial on the issue of punishment" because the State's failure to disclose the felonious extraneous acts Ms. Cooke described violated Mr. McKenzie's due process rights. Defense counsel argued there was no instruction that could cure the harm done by Ms. Cooke's testimony.

Following a recess, the trial court overruled the mistrial motion. When the jury returned, the trial court instructed them that "the testimony of Candice Cooke on punishment is stricken from the record" and they were "not to mention, refer, or discuss her testimony on punishment, period." The trial court's written jury charges in each case instructed that if the jury found both enhancement paragraphs true, they were to "assess the punishment of the Defendant at confinement in the Texas Department of Criminal Justice for not more than ninety-nine (99) years or life nor less than twenty-five (25) years." The jury found both enhancement paragraphs true in each case.

**The evidence is sufficient to support both convictions**

In determining the sufficiency of the evidence, the reviewing court considers the evidence in the light most favorable to the verdict to determine whether any

–6–

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

A person commits indecency with a child if he engages in sexual contact with a child under seventeen or causes the child to engage in sexual contact. *See* TEX. PENAL CODE § 21.11(a)(1). "'Sexual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person." *Id.* § 21.11(c).

A person commits aggravated sexual assault if he intentionally or knowingly causes the sexual organ of a child under fourteen to "contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." *Id.* § 22.021(a)(1)(B)(iii), (2)(B); *see also IslasMartinez v. State*, 452 S.W.3d 874, 879–80 (Tex. App.—Dallas 2014, pet. ref'd) ("contact" for aggravated sexual assault of a child may occur through clothing). The testimony of a child victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual

assault of a child. *See* TEX. CODE CRIM. PROC. art. 38.07; *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.).

In his first and second issues, Mr. McKenzie challenges the sufficiency of the evidence to support his convictions, highlighting certain inconsistencies, the lack of physical evidence, and the State's presentation of only the "young complainant" as a direct witness to the events. P.D. testified to facts constituting each charged offense. *See* TEX. PENAL CODE §§ 21.11, 22.021. To the extent the record supports conflicting inferences, "we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *accord Jackson*, 443 U.S. at 319. Considering the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support Mr. McKenzie's convictions. *See Acosta*, 429 S.W.3d at 624–25; *see also* TEX. CODE CRIM. PROC. art. 38.07; *Revels*, 334 S.W.3d at 52.

**The trial court did not abuse its discretion by denying the motion for mistrial**

In his third and fourth issues, Mr. McKenzie contends the trial court "erred in denying [his] requested mistrial on the issue of punishment because the State did not turn over discovery in relation to extraneous offenses related to the punishment hearing that was not disclosed."[1] Mr. McKenzie argues "he was denied a substantial right of due process and a fair punishment hearing in each cause number due to the

---

[1] The parties agree Mr. McKenzie properly requested disclosure of evidence of extraneous offenses or bad acts the State planned to use in the punishment phase and that he received no notice regarding the complained-of extraneous offenses.

State's witness testifying about extraneous felonies that were very prejudicial" and that no instruction or striking of testimony could have cured the harm from testimony for which he had received no disclosures.

We review the denial of a mistrial motion for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is the trial court's remedy for error that is "so prejudicial that expenditure of further time and expense would be wasteful and futile" and is required only in extreme circumstances where the prejudice is incurable. *Id.* A prompt instruction to disregard will ordinarily cure error associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *see also Hawkins*, 135 S.W.3d at 77 ("In effect, the trial court . . . determin[es] whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction."). "We generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

On a defendant's timely request, the State must give the defendant notice of intent to introduce evidence of extraneous bad acts during the punishment phase. *See* TEX. CODE CRIM. PROC. art. 37.07; TEX. R. EVID. 404(b). "The admission of an extraneous offense into evidence during the punishment phase when the State failed to provide notice required by statute is non-constitutional error." *Gonzalez v. State*, 337 S.W.3d 473, 485 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In criminal

cases, appellate courts must disregard non-constitutional error that does not affect substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

The jury convicted Mr. McKenzie of two felony sex offenses committed at different times against the same child who was the daughter of his significant other. During the punishment phase, the State presented evidence of Mr. McKenzie's prior felony convictions, increasing the floor on punishment to twenty-five years and the ceiling to life in prison. Not only did the jury's fifty-five-year sentences fall below the midpoint of the range (sixty-two years), they run concurrently. Also, the State had previously disclosed numerous extraneous acts and offenses to the defense. And, the trial court appears to have credited the State's representation that it was previously unaware of the specific incidents Ms. Cooke described.

On this record, we conclude the trial court did not abuse its discretion by determining the complained-of testimony was not so extreme as to be incurable by an instruction to disregard. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (whether error requires mistrial must be determined by case's particular facts); *see also Degollado v. State*, No. 04-06-00404-CR, 2007 WL 2186915, at *2 (Tex. App.—San Antonio Aug. 1, 2007, no pet.) (mem. op., not designated for publication) (jury instruction to disregard cured any prejudice from extraneous bad act testimony

–10–

that mother's boyfriend charged with aggravated sexual assault of child had assaulted mother).

**The assessed fines were not statutorily authorized**

In his fifth and sixth issues, Mr. McKenzie contends the punishment charge in each case erroneously allowed the jury to assess a fine not authorized by penal code section 12.42(d). The State agrees. Though the jury assessed fines in each case, section 12.42(d) does not authorize any fine. *See* TEX. PENAL CODE § 12.42(d); *Biggers v. State*, No. 07-18-00374-CR, 2020 WL 1146711, at \*1 n.3 (Tex. App.— Amarillo Mar. 6, 2020, no pet.) (stating section 12.42(d) provides for imprisonment "without the possibility of a fine"). Thus, we must reform the trial court's judgments to "omit the punishment not authorized by law," here, the $10,000.00 fines. *See* TEX. CODE CRIM. PROC. art. 37.10(b); *Nixon v. State*, 483 S.W.3d 562, 565, 569 (Tex. Crim. App. 2016).

\* \* \*

We decide against Mr. McKenzie on his first through fourth issues, and in his favor on his fifth and sixth issues. We (1) modify the trial court's judgments to delete the $10,000.00 fine in each case and (2) affirm both judgments as modified.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190405F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WINSTON A. MCKENZIE,
Appellant

No. 05-19-00405-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F17-20656-T.
Opinion delivered by Justice Carlyle.
Justices Bridges and Molberg
participating.

Based on the Court's opinion of this date, the trial court's judgment is **MODIFIED** to delete the $10,000.00 fine.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 7th day of April, 2020.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WINSTON A. MCKENZIE,
Appellant

No. 05-19-00406-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F19-00104-T.
Opinion delivered by Justice Carlyle.
Justices Bridges and Molberg
participating.

Based on the Court's opinion of this date, the trial court's judgment is **MODIFIED** to delete the $10,000.00 fine.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 7th day of April, 2020.